UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

282 MOUNTAINVIEW DRIVE LLC,

                Plaintiff/Counterclaim Defendant,

     - against -

NORGUARD INSURANCE COMPANY,

                 Defendant/Counterclaimant.

-------------------------------------------------------------x

NORGUARD INSURANCE COMPANY,

               Third-Party Plaintiff,

     - against -

INFINITY INSURANCE BROKERAGE INC.,
now known as SKYSCRAPER INSURANCE
SERVICES, INC.,

              Third-Party Defendant.

-------------------------------------------------------------x

**OPINION & ORDER**

No. 19-CV-2048 (CS)

Appearances:

Yale Glazer
Lazare Potter Giacovas & Moyle LLP
New York, New York
*Counsel for Defendant/Counterclaimant/Third-Party Plaintiff*

Robert M. Sullivan
Sullivan & Klein, LLP
New York, New York
*Counsel for Third-Party Defendant*

Seibel, J.

      Before the Court are cross-motions for summary judgment filed by Third-Party Plaintiff

Norguard Insurance Company ("Norguard") and Third-Party Defendant Infinity Insurance

Brokerage Inc., now known as Skyscraper Insurance Services, Inc. ("Skyscraper").  (Docs. 58, 65.)  For the following reasons, Norguard's motion is GRANTED and Skyscraper's motion is DENIED.

## I.  BACKGROUND

The following facts are undisputed except where noted.

### A.  Facts

#### 1.  Skyscraper's Relationship to Plaintiff

Skyscraper was originally formed in July 2016 under the name of Infinity Insurance Brokerage Inc. (*See* Docs. 74-5; 74-6 ("Fisch Dep.") at 16:21-17:9.)  Because another brokerage was using a similar name, Skyscraper changed its name in January 2018.  (Doc. 74-5; Fisch Dep. at 16:21-18:2.)[1]

Skyscraper's principals are Chaim Berkovic and Joseph Fisch, and its offices are in Spring Valley, New York.  (Fisch Dep. at 14:10-15:9, 19:6-9.)  The principal of the plaintiff in this action, 282 Mountainview Drive LLC, is Joel Reisman, who is Berkovic's first cousin. (Doc. 74-20 ("Berkovic Dep.") at 27:17-28:11; Doc. 74-8 ("Reisman Dep.") at 11:7-12:13.) Berkovic and Fisch developed a professional relationship with Reisman by writing and reviewing insurance policies for some of his business ventures, including, eventually, 282 Mountainview Drive LLC.  (Berkovic Dep. at 28:17-30:12, 36:16-37:16.)

---

[1] Infinity Insurance Brokerage, Inc. and Skyscraper, in terms of corporate existence, are one and the same legal entity.  For consistency's sake I will refer to the entity as "Skyscraper" throughout this opinion, even though at the time in question the entity may have been known as Infinity Insurance Brokerage Inc.

### 2.    Skyscraper's Agency Agreement with Norguard

In September 2016, Norguard's affiliate Westguard Insurance Company entered into an agency agreement (the "Agreement" or the "Agency Agreement") with Skyscraper.  (Doc. 70-1 ("Agreement"); Fisch Dep. at 129:10-130:20.)  The Agreement gave Skyscraper the ability to solicit, and, in some circumstances, bind coverage via Norguard's automated system. (Agreement ¶ 1; Fisch Dep. at 137:5-138:19.)  The Agreement contained a provision requiring Skyscraper to abide by a "Duty to Investigate Insurability," which required Skyscraper to "acquaint [Norguard] with all facts relevant to insurability of the risk," "not knowingly bind the Companies on any prohibited risk . . . nor withhold any material information pertinent to underwriting a policy," and "diligently and to the best of its ability ensure that the facts set forth by any applicant in any application it solicits are true, correct and contain no misrepresentation or incorrect characterizations."  (Agreement ¶ 8.)  Additionally, the Agreement required Skyscraper to "report promptly all losses or claims," (*id.* ¶ 10), and contained an indemnification provision requiring Skyscraper to defend and indemnify Norguard for, and hold it harmless from, any costs or expenses, including attorneys' fees, "arising out of or resulting from any negligence, error, omission or intentional act of [Skyscraper]," (*id.* ¶ 16).

### 3.    Plaintiff's Norguard Policy

Plaintiff's property at 282 Mountainview Drive (the "Property") was insured by Travelers Casualty Insurance Company of America ("Travelers") for the policy period February 13, 2018 to February 13, 2019.  (Doc. 70-7 ("Travelers Policy").)  The Travelers Policy contained a protective safeguard endorsement ("PSE") requiring Plaintiff to maintain automatic sprinklers in

the Property, (Travelers Policy at 142-43[2]), but the Property never had sprinklers, (Reisman Dep. at 74:14-75:11, 92:4-95:4; Doc. 74-7 ("Reisman EUO") at 61:15-19.)

In 2018, Reisman provided Berkovic and Fisch a copy of the Travelers Policy via email and permitted Skyscraper to try to replace this coverage on the Property.  (Reisman Dep. at 26:16-28:11.)  Reisman told Skyscraper to make sure that the Property was inspected by any new insurance company, but he did not discuss any PSE.  (*Id.* at 31:25-33:10.)  Fisch did not look at any documents other than the Travelers Policy before submitting to the Norguard system the application for replacement coverage for the Property.  (Fisch Dep. at 53:13-16.)  Fisch believed the Property had automatic sprinklers based on the Travelers Policy's inclusion of a PSE, and indicated in the submission to Norguard that the Property had such a system.  (*Id.* at 57:8-13, 82:21-83:19, 86:23-87:22; Doc. 74-15 ("Janecek Dep.") at 54:24-55:8.)  Based on the representation that the Property had automatic sprinklers, the system generated a $313 discount on Plaintiff's premium and added a PSE for automatic sprinklers to the insurance quote.  (*See* Fisch Dep. at 86:23-87:22; Janecek Dep. at 54:24-55:8, 55:16-25.)

Skyscraper's submission on Plaintiff's behalf was reviewed by Norguard's underwriting department, (Fisch Dep. at 142:19-24, 304:7-18; Janecek Dep. at 79:2-80:20), after which Norguard created an insurance proposal based on Skyscraper's submission, (Doc. 70-9; Fisch Dep. at 139:10-143:17; Janecek Dep. at 95:2-22.  The proposal listed the PSE among the "Policy Forms To Be Attached at Issuance."  (Doc. 70-9 at 84.)  It also contained a notice entitled "IMPORTANT INFORMATION," which stated that a PSE was included in the

---

[2] References to page numbers in Docs. 70-7 and 70-9 refer to the Bates numbers in the bottom-right corner, and references to page numbers in 70-11 and 74-14 refer to the Bates numbers in the top-right corner.

proposal, that it required the insured to maintain an automatic sprinkler system, and that failing to comply with that requirement could result in denial of a claim under the policy.  (*Id.* at 86.)

Skyscraper forwarded portions of the Norguard proposal to Plaintiff, but – for reasons that are unexplained – removed the forms list, which listed the PSE, and the "IMPORTANT INFORMATION" notice specifically addressing the existence of the PSE and 282 Mountainview's obligations in connection with that endorsement.  (*See* Doc. 70-10; Fisch Dep. at 157:23-159:4; 163:23-164:6.)  Reisman signed the proposal.  (Doc. 70-10; Fisch Dep. at 168:19-169:2.)

After receiving Reisman's approval, Norguard issued a policy effective from March 21, 2018 to March 21, 2019 (the "Policy" or the "Norguard Policy"), which contained the automatic sprinkler PSE and another "IMPORTANT INFORMATION" notice about the PSE.  (Doc. 70-11 ("Norguard Policy") at 5, 33; Fisch Dep. at 71:20-23.)  The PSE specifically stated that "As a condition of this insurance, you are required to maintain [an Automatic Sprinkler System],"  and that "[Norguard] will not pay for loss or damages caused by or resulting from fire if, prior to the fire, you . . . [k]new of any suspension or impairment in any protective safeguard listed . . . above and failed to notify us of that fact" or "[f]ailed to maintain any protective safeguard listed . . . above, and over which you had control, in complete working order."  (Norguard Policy at 33.)  The Travelers Policy was never canceled.  (Reisman Dep. at 88:13-89:21.)

Prior to May 29, 2018, neither Skyscraper nor Plaintiff raised any issues with Norguard concerning the Policy or the fact that it contained the sprinkler PSE.  (Fisch Dep. at 91:6-23; Reisman Dep. at 90:7-10, 112:23-113:2, 120:22-121:12.)  Reisman testified that he did not review the Policy or discuss sprinklers or the PSE with Skyscraper prior to the fire loss. (Reisman Dep. at 39:8-40:4, 90:7-10, 112:23-113:2; Reisman EUO at 65:21-66:8.)

4.       **The Fire and Attempts to Remove the PSE**

On May 29, 2018, the Property sustained a fire (the "Fire Loss").  (Fisch Dep. at 92:6-93:7; Reisman EUO at 68:8-69:2.)  Berkovic and Fisch learned of the fire in the early afternoon from Berkovic's mother.  (Berkovic Dep. at 81:23-83:8.)  Berkovic then contacted Reisman to advise him and to see if he needed a public adjuster's services.  (*Id.* at 83:13-85:9; Reisman EUO at 79:5-80:18.)  Reisman was already aware of the fire and had already engaged a public adjuster, his neighbor Ben Itzkowitz.  (Reisman Dep. at 69:14-70:7; 70:23-71:12; Berkovic Dep. at 84:7-85:9.)  Reisman claims that neither Berkovic nor Fisch mentioned the PSE and that he never asked Skyscraper to attempt to remove the PSE.  (Reisman EUO at 79:5-82:20; Reisman Dep. at 76:2-21.)  After the fire, Itzkowitz told Fisch and Berkovic to attempt to remove the PSE effective at inception of the Policy.  (Fisch Dep. at 181:14-25; Berkovic Dep. at 91:16-92:19, 97:24-98:10, 270:24-271:20.)  Fisch was aware that if the PSE remained on the Policy, coverage for the Fire Loss could be denied.  (Fisch Dep. at 180:22-181:13, 202:13-25.)

At 2:46 p.m. on the day of the fire, Fisch sent Norguard a "conversation" via the agency portal, stating "this building does not have a sprinkler system."  (Doc. 70-13; Fisch Dep. at 189:7-190:20).  Fisch then sent a second conversation and an email at 3:40 p.m., stating "Please remove the sprinkler system and the Central Station system as the insure[d] doesn't have [it.] Please remove it as [of] inception[.]  I just found out because I quoted his personal policy." (Docs. 70-13; 70-14; *see* Fisch Dep. at 190:24-195:13.)  The statement that Fisch had learned of the absence of the sprinkler system while quoting a personal policy was false.  (Fisch. Dep. at 179:10-181:13, 205:4-20.)  Fisch also placed three separate calls to Norguard, at 2:44, 2:49 and 2:52 p.m., each time seeking removal of the PSE, (Doc. 70-15; Fisch Dep. at 200:7- 202:25), and also pursued a series of online chats, (Docs. 70-16; 70-17).  Fisch chatted with "Tim" starting at

3:06 p.m., and with "Chris" starting at 4:09 p.m. (Docs. 70-16; 70-17.)  "Tim" advised that

Fisch's request was "in our workflow now" and would "be completed as quickly as possible,"

while "Chris" agreed to remove the PSE and advised that the request would be "updated

momentarily" and that "[t]he endorsement will come across in the next 5 minutes." (Docs. 70-

16; 70-17.)  Chris, who was later identified as Christopher Yarmel, told his supervisor, Carrie

Tykosh, about Fisch's request, and Tykosh agreed to approve it.  (Doc. 70-18 ("Tykosh Dep.") at

26:3-28:3.)

Tykosh and Yarmel did not have the authority to remove a policy endorsement as of

inception, however, because any request to make a change retroactive was supposed to be sent to

Norguard's backdating department.  (Tykosh Dep. at 13:1-14:16, 17:21-18:1, 19:6-20, 29:1-7;

Doc. 74-14 at 1851-52.)  Tykosh testified that in approving the removal of the PSE retroactively,

she knowingly violated Norguard's policies and procedures, and did so because it was a busy

day, she was the only supervisor on site, and she "was aware that the agent had been repetitively

contacting us and . . . was being aggressive and I was trying to mitigate that so we can get this

agent what he needed."  (Tykosh Dep. at 28:1-12, 41:25-42:8, 45:14-46:1.)  She was disciplined

for her conduct.  (*Id*. at 44:12-46:3.)  Tykosh was familiar with the underwriting guidelines and

felt comfortable removing the PSE because the property "was not a building that we would have

required a protective safeguard to continue on with the policy."  (*Id.* at 26:3-27:15.)

Norguard learned of the Fire Loss for the first time on June 1, 2018, and although

Norguard's claim notes state that notice of loss was made via telephone call by someone named

"Joel," which is Reisman's first name, neither Reisman nor Itzkowitz admit to notifying

Norguard of the Fire Loss.  (Doc. 74-35 ("Prislupsky Dep.") at 21:17-22:6; Reisman Dep. at

135:6-136:17; Doc. 74-19 ("Itzkowitz Dep.") at 51:21-52:24; *see* Doc. 70-15.)   In a June 6,

2018 phone call with Peter Prislupsky, a property general adjuster for Norguard, Fisch stated that

he only learned of the fire later in the evening of May 29, 2018, and that his calls, chats and

emails on May 29, 2018 to have the PSE removed were a result of a review of Mr. Reisman's

homeowners' policy where he learned that the property was not sprinklered.  (Doc. 61 ¶ 63.)

Fisch now acknowledges that that statement was false, and admits he knew of the Fire Loss at

the time he made the contacts with Norguard.  (Fisch. Dep. at 101:3-10, 179:10-181:13, 205:4-

20.)  Norguard flagged the claim as "Red banner . . . due to claims issues" on June 4, 2018, and

on June 8, 2018 reinstated the PSE "to correct internal error."  (Doc. 70-15.)  Following Mr.

Reisman's Examination Under Oath ("EUO") on November 15, 2018, Norguard denied coverage

for the Fire Loss by letter dated January 22, 2019.  (Doc. 70-21.)

### B.   Procedural History

#### 1.   The Instant Action

Plaintiff filed this action against Norguard on March 6, 2019.  (Doc. 1.)  Norguard

answered, asserted counterclaims, and commenced a third-party action against Skyscraper.

(Doc. 13.)  Norguard asserted claims for breach of contract against Skyscraper for allegedly

violating its contractual obligations to provide Norguard with all relevant information and

promptly advise of losses, and Norguard sought indemnification for its costs and fees.  (*Id.* at

16.)  Skyscraper answered the third-party complaint on July 1, 2019.  (Doc. 25.)  In advance of

the post-discovery status conference on June 2, 2020, the parties submitted pre-motion letters for

cross-motions for summary judgment, as well as letters in response. (Docs. 43-49.)  At a

subsequent mediation session, which Skyscraper also attended, Plaintiff and Norguard settled

their dispute, and by a Stipulation and Order of this Court dated July 6, 2020, Plaintiff's action

against Norguard was discontinued with prejudice, leaving only the third-party action by Norguard against Skyscraper.  (Doc. 52.)

## 2.    The Orange County Action

On July 17, 2020, Plaintiff filed suit in Orange County Supreme Court against Skyscraper, Travelers, and the insurance agent who placed the Travelers Policy.  (Doc. 74-32.) In that action, Plaintiff asserts claims for against Skyscraper for negligence and breach of contract in procuring a policy containing a PSE and seeks to recover the sum of $1,236,004, which is the limit of liability of the Norguard Policy, less the amount of the Norguard settlement. (*Id.* ¶¶ 54, 106-131.)  On August 31, 2020, Skyscraper filed a third-party complaint against Norguard in Orange County, seeking the assumption of Skyscraper's defense and indemnity for any judgment or settlement against Skyscraper in the Orange County action.  (Doc. 74-33.)

## II.    LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[T]he dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing law . . . .  Factual disputes that are irrelevant or unnecessary will not be counted."  *Id.*  On a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Id.* at 255.

The movant bears the initial burden of demonstrating "the absence of a genuine issue of material fact," and, if satisfied, the burden then shifts to the non-movant to "present evidence sufficient to satisfy every element of the claim."  *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d

Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]."  *Anderson*, 477 U.S. at 252.  Moreover, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and he "may not rely on conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (cleaned up).

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials . . . ."  Fed. R. Civ. P. 56(c)(1).  Where an affidavit is used to support or oppose the motion, it "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated."  *Id.* 56(c)(4); *see Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008).  In the event that "a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it."  Fed. R. Civ. P. 56(e).

This standard applies to cross-motions for summary judgment.  *See Morales v. Quintel Ent., Inc.*, 249 F.3d 115, 121 (2d Cir. 2001); *C & A Carbone, Inc. v. County of Rockland*, No. 08-CV-6459, 2014 WL 1202699, at *5 (S.D.N.Y. Mar. 24, 2014).  Generally, in deciding cross-motions for summary judgment, "each party's motion must be examined on its own merits, and

in each case all reasonable inferences must be drawn against the party whose motion is under consideration."  *Morales*, 249 F.3d at 121; *see Chartis Seguros Mex., S.A. de C.V. v. HLI Rail & Rigging, LLC*, 3 F. Supp. 3d 171, 179 (S.D.N.Y. 2014).  But where, as here, the motion and cross-motion seek a determination of the same issues, the Court may consider them together. *Royal & Sun All. Ins., PLC v. E.C.M. Transp., Inc.*, No. 14-CV-3770, 2015 WL 5098119, at *2 (S.D.N.Y. Aug. 31, 2015); *Chartis Seguros*, 3 F. Supp. 3d at 179.

III.   **DISCUSSION**

The facts of this case demonstrate a parade of errors by all involved – some inadvertent, some not.  While the material facts are largely undisputed, the parties frame the legal issues on their cross-motions in markedly different ways.  On the one hand, Norguard contends that Skyscraper's efforts to remove the PSE from the Policy after the fire without informing Norguard of the Fire Loss violated the Agency Agreement between Norguard and Skyscraper, and views the ensuing investigation of Plaintiff's insurance claim, as well as the litigation and settlement of its dispute with Plaintiff, to be a direct result of that breach.  (*See* Doc. 66 ("Norguard Mem.") at 16-17; Doc. 72 ("Norguard Reply)" at 10-11.)  According to Norguard, Skyscraper was therefore responsible for defending Norguard in this action, and now has a responsibility to indemnify it for the settlement payment it made to Plaintiff, along with the attorneys' fees, costs, and expenses associated with this case. (Doc. 13 at 16-17; Norguard Mem. at 10; Norguard Reply at 2, 8.)

Skyscraper, on the other hand, contends that it did not breach its agency agreement with Norguard because Norguard would have insured the risk even without the PSE, meaning that the PSE should never have been on the Norguard Policy to begin with, rendering any error on its part harmless.  (*See* Doc. 59 ("Skyscraper Mem.") at 8-10; Doc. 64 ("Skyscraper Reply") at 4-5.)

Skyscraper argues that the inclusion of the PSE in the Policy was a mutual mistake, meaning that reformation of the Policy backdated to inception was proper.  (Skyscraper Mem. at 10; Skyscraper Reply at 4-5.)  It further reasons that because Norguard would therefore have been required to cover Plaintiff's claim, even absent Skyscraper's failure to notify Norguard of the Fire Loss, Skyscraper's omission was not "material" under the terms of the Agreement. (Skyscraper Mem. at 14; Skyscraper Reply at 2-3.)  Accordingly, Skyscraper believes that even if its failure to advise Norguard of the Fire Loss constituted a breach of the Agency Agreement, Norguard suffered no damages as a result of that breach other than the difference in premiums, because Norguard would have issued coverage for the property even without the PSE for an additional $313.  (Skyscraper Mem. at 9-12; Skyscraper Reply at 5.)

Alternatively, Skyscraper contends that even if Norguard was entitled to reinstate the PSE, the settlement payment to Plaintiff was a voluntary payment, as Norguard properly disclaimed coverage for the Fire Loss.  (Skyscraper Mem. at 15-18.)  Because Norguard settled its claims with Plaintiff before the all-or-nothing issue of whether the Norguard Policy should be reformed to exclude the PSE was decided, Skyscraper contends that the settlement payment was voluntary, because either reformation to exclude the PSE was proper, meaning Norguard owed the full amount of coverage, or it was not, meaning Norguard owed nothing.  (*Id.*)  Finally, Skyscraper contends that the reformation issue is so integral to the resolution of the third-party action that Plaintiff 282 Mountainview Drive LLC is an indispensable party, and so the third-party complaint must be dismissed.  (Skyscraper Mem. at 18-22; Skyscraper Reply at 6-9.)

### A.    Plaintiff as an Indispensable Party

Skyscraper argues the third-party complaint must be dismissed because Plaintiff is a necessary and indispensable party under Federal Rule of Civil Procedure 19.  Rule 19 provides

that a person or entity must be joined as party to an action where, in its absence, a court cannot afford complete relief among the parties, or where the absent party has an interest in the subject matter of the action and its absence subjects an existing party to the action to a substantial risk of incurring double, multiple, or inconsistent obligations.  Fed. R. Civ. P. 19(a).  "The burden is on the moving party to show . . . that the parties before the court will be disadvantaged by [the missing party's] absence."  *Baldwin v. Interscope Records, Inc.*, No. 19-CV-8923, 2021 WL 847976, at *4 (S.D.N.Y. Mar. 4, 2021) (cleaned up).  "If a party does not qualify as necessary under Rule 19(a), then the court need not decide whether its absence warrants dismissal under Rule 19(b)."  *Viacom Intern., Inc. v. Kearney*, 212 F.3d 721, 724 (2d Cir. 2000).

I am not persuaded by Skyscraper's argument that Plaintiff, who was a party to this action until Norguard settled its dispute with that entity, must be joined (again) to adequately adjudicate Norguard's third-party action against Skyscraper, which is all that remains in this case.  The third-party complaint alleges that Skyscraper breached its agency agreement with Norguard when Skyscraper sought removal of the PSE without first notifying Norguard of the Fire Loss earlier that day, and that it failed to uphold its duty under that Agreement to defend and indemnify Norguard for costs resulting from that breach.  (*See* Doc. 13.)  I fail to see how the dismissal with prejudice of Plaintiff's original claim seeking reformation of the Norguard Policy precludes the ability of the Court to analyze *Skyscraper's* actions in connection with whether it breached its agency agreement with Norguard, when the Norguard Policy is not the agreement at the center of the remaining dispute.  As explained in greater detail below, it is unnecessary for the Court to determine the proper scope of the Norguard Policy's coverage before deciding whether Skyscraper breached its agency agreement.  *Cf. Jonesfilm v. Lion Gate Int'l*, 299 F.3d 134, 141 (2d Cir. 2002) ("If the resolution of a . . . claim would require the definition of a non-

party's rights under a contract, it is likely that the non-party is necessary under Rule 19(a)."); *Ryan v. Volpone Stamp Co., Inc.*, 107 F. Supp. 2d 369, 387 (S.D.N.Y. 2000) ("It is well-established that a party to a contract which is the subject of the litigation is considered a necessary party.") (collecting cases).

Additionally, I fail to see how a judgment in this action would produce rulings or obligations potentially inconsistent with those in the action in Orange County. Here, the damages for which Skyscraper would be liable to Norguard are limited to the amounts paid by Norguard in connection with the investigation, defense, litigation, and settlement of the federal action between Plaintiff and Norguard. (*See* Docs. 13, 70-25, 70-26.) The Orange County action, by contrast, centers on the relationship between Plaintiff and Skyscraper, with possible indemnification by Norguard. (*See* Docs. 74-32, 74-33.) Skyscraper concedes that Plaintiff only seeks recovery from Skyscraper in the Orange County action for an amount *excluding* the settlement it received from Norguard in this action, (Doc. 60 ¶ 66), so Skyscraper will not be subject to a double obligation. Ultimately, although they concern the same underlying facts, these actions involve two distinct issues and center on two separate alleged breaches of two separate agreements, so I fail to see a realistic possibility of inconsistent rulings or duplicative payments.

Accordingly, because Skyscraper has not shown any real threat of prejudice to either itself or Plaintiff caused by Plaintiff's absence, I find that Plaintiff is not a necessary party to this action under Rule 19. *See E&T Skyline Constr., LLC v. Talisman Cas. Ins. Co.*, No. 19-CV-8069, 2020 WL 6531108, at *8-9 (S.D.N.Y. July 30, 2020), *report and recommendation adopted*, 2020 WL 5813770 (S.D.N.Y. Sept. 30, 2020).

B.   **Reformation of the Norguard Policy**

Next, while Plaintiff's reformation claim is no longer pending in this action and Skyscraper concedes that formal reformation of the Policy is irrelevant, (Skyscraper Reply at 4-5), both parties devote a substantial portion of their briefs to the issue of whether the Norguard Policy should be read to either include or omit the PSE.  (*See* Skyscraper Mem. at 9-10; Norguard Reply at 8-9; Skyscraper Reply at 4-5.)

Skyscraper argues that the "key issue" in this case is not whether it breached its agreement with Norguard, but whether the PSE was properly included on the Norguard Policy in the first place, citing the equitable doctrine of mutual mistake.  (Skyscraper Mem. at 10; *see* Skyscraper Reply at 4.)  Skyscraper seems to argue that because (1) the risk would have been underwritten had Skyscraper and Norguard both been aware that the Property did not have a sprinkler system, and (2) the contract clearly should have been reformed to reflect this mutual mistake, Skyscraper properly corrected an earlier error by seeking to remove the PSE from the Policy, and Norguard suffered no damages (except perhaps the $313 difference in premium) from any breach by Skyscraper of the Agency Agreement.  (*See* Skyscraper Mem. at 9-10.)  In other words, according to Skyscraper, because the Policy surely would have been reformed under the doctrine of mutual mistake to exclude the PSE, Norguard would have been obligated to cover the claim for the fire damage, and Skyscraper's failure to advise Norguard of the Fire Loss when requesting the PSE be retroactively eliminated is irrelevant.  I disagree.

I fail to see how the issue of whether the Policy would be reformed to exclude the PSE drives the outcome of the remaining counterclaim.  Because Norguard and Plaintiff settled their dispute before Plaintiff's reformation claim could be litigated on the merits, the only remaining issues in the case are (1) whether Skyscraper breached the Agency Agreement by failing to

notify Norguard of the loss when seeking to remove the PSE, and (2) whether, as a result of that

breach, Norguard is entitled to compensation from Skyscraper for the sum paid to settle

Plaintiff's lawsuit against Norguard, as well as the attorneys' fees and expenses connected with

this action.  Both of these issues are determined under the contract between Norguard and

Skyscraper, not the contract between Norguard and 282 Mountainview.  I thus need not decide

whether reformation of the Policy would have been appropriate.[3]

---

[3] Even if it the reformation issue were dispositive, Skyscraper's arguments that the Policy would inevitably be reformed under the doctrine of mutual mistake are misplaced.  "In a case of mutual mistake, the parties have reached an oral agreement and, unknown to either, the signed writing does not express that agreement."  *Chimart Assocs. v. Paul*, 66 N.Y.2d 570, 573 (1986). Here Plaintiff believed it had obtained a policy for premises without a sprinkler system, and Norguard believed it had issued a policy for premises with such a system.  This is thus not the situation envisioned by the doctrine: where "both parties to a bilateral transaction share the same erroneous belief and their acts do not in fact accomplish their mutual intent."  *Healy v. Rich Prods. Corp.*, 981 F.2d 68, 73 (2d Cir. 1992) (cleaned up).  A gap in coverage resulting from the unilateral mistake or oversight of the insured or its agent is not a ground for reformation, particularly where the insured had time to review for and correct any error.  *Town of German Flats v. Aetna Cas. & Sur. Co.*, 572 N.Y.S.2d 819, 820-21 (App. Div. 1991); *see Ogdensburg Bldg. Supply, Inc. v. Lumber Mut. Ins. Co.*, 477 N.Y.S.2d 825, 827 (App. Div. 1984).  Were the above the last word on the issue, I would have no difficulty concluding that reformation would be inappropriate here.  But despite the above, courts have ordered reformation based on mutual mistake "where the insured's premises are not as described in the policy but the insurer has not shown that it would not have insured the premises had it known the true facts."  *Testa v. Utica Fire Ins. Co.*, 610 N.Y.S.2d 85, 85 (App. Div. 1994).  In other words, courts have regarded innocent errors by applicants for insurance as mutual for purposes of reformation even if the insurer is unaware of the error, *see Princeton Restoration Corp. v. Int'l Fid. Ins. Co.*, 338 F. Supp. 2d 391, 396 (E.D.N.Y. 2004), and reformed the policy if the insurer would have insured the risk with accurate information, *Testa*, 610 N.Y.S.2d at 85; *see Abulaynain v. N.Y. Merchs. Bankers Mut. Fire Ins. Co.*, 513 N.Y.S.2d 5, 6 (App. Div. 1987) (allowing reformation where broker inadvertently conveyed incorrect information, but insurer would have issued policy had correct information been provided).  *Testa* applied this principle even though – as here – the insurer would only have insured the risk at a higher price.  610 N.Y.S.2d at 85.  It was clear in *Testa*, however, that there was "no allegation that the plaintiffs misrepresented their building as having a working sprinkler system," the incorrect information having come from an unrelated third party.  *Id.*; *see N. Atl. Life Ins. Co. of Am. v. Rothman*, 542 N.Y.S.2d 795, 796 (App. Div. 1989) (material misrepresentation bars reformation).  Here the inaccurate information came from the insured and its agent.  All this is to say that it is by no means clear that reformation surely would result on the facts here.

C.      **Breach of the Agency Agreement**

The parties agree that this dispute is governed by New York law.  (*See* Norguard Mem. at

15; Skyscraper Mem. at 10-12.)  To establish a breach of contract, a plaintiff must prove (1) the

existence of a contract; (2) the plaintiff's performance of the contract; (3) the defendant's breach

of the contract; and (4) damages suffered as a result of the breach.  *See Terwilliger v. Terwilliger*,

206 F.3d 240, 245-46 (2d Cir. 2000); *Kramer v. Lockwood Pension Servs., Inc.*, 653 F. Supp. 2d

354, 386 (S.D.N.Y. 2009).  Summary judgment is appropriate "where the language of the

contract is unambiguous, and reasonable persons could not differ as to its meaning."  *Rothenberg*

*v. Lincoln Farm Camp, Inc.*, 755 F.2d 1017, 1019 (2d Cir. 1985).

As noted above, this action centers around the Agency Agreement between Norguard and

Skyscraper.  The Agreement required Skyscraper to "acquaint [Norguard] with all facts relevant

to insurability of the risk," "not knowingly bind [Norguard] on any prohibited risk, . . . nor

withhold any material information pertinent to underwriting a policy," (Agreement ¶ 8), and

"report promptly all losses or claims," (*id.* ¶ 10.)  Norguard argues that Skyscraper breached

these provisions when, with Berkovic and Fisch having full knowledge of the Fire Loss on May

29, 2018, Fisch repeatedly requested that Norguard remove the PSE backdated to when the

Policy was issued, without informing Norguard of that loss.

In response, Skyscraper argues that it did not specifically notify Norguard of the Fire

Loss because it was under the impression that Plaintiff's public adjuster, Itzkowitz, was going to

do so, and again argues that because the PSE was not properly on the Policy to begin with and

Norguard would have accepted the risk for a higher premium anyway, its omission was not

"material information" that would bind Norguard to a "prohibited risk."  (Skyscraper Mem. at

14.)  Both of these arguments are beside the point.  As to the first, Skyscraper provides no

authority for the proposition that a party with a contractual obligation to notify is excused from that obligation because it surmises someone else might provide the same notification – particularly here, where Skyscraper did nothing to ensure that the notification was made by Itzkowitz and it apparently was not made.  As to the second, a misrepresentation is material if the insurer would not have issued the same policy at the same price.  *See, e.g.*, *Mut. Ben. Life Ins. Co. v. JMR Elecs. Corp.*, 848 F.2d 30, 32-34 (2d Cir. 1988) ("Most risks are insurable at some price.  The purpose of the materiality inquiry is not to permit the [factfinder] to rewrite the terms of the insurance agreement to conform to the newly disclosed facts but to make certain that the risk insured was the risk covered by the policy agreed upon."); *Admiral Ins. Co. v. Brockwood Mgmt. #10, LLC*, No. 16-CV-437, 2018 WL 5622595, at *21 (E.D.N.Y. Mar. 30, 2018) ("[I]f the true facts would have necessitated a higher premium, than the misrepresentations are material.") (collecting cases).  Here it is undisputed that Norguard would have initially charged a higher premium had it known there was no sprinkler system at the Property.  (*See* Docs. 61 ¶ 20; 71 ¶ 27.)[4]  Thus, the initial misrepresentation regarding sprinklers, made at the time the insurance contract was reached, was material and would permit Norguard to deny coverage (absent reformation).  But the misrepresentation regarding the sprinkler system at the time the Policy was issued is the not the misrepresentation on which Norguard sues here.  Norguard charges Skyscraper with the material omission of the fact of the fire at the time of the removal of the PSE.

---

[4] Norguard does dispute that "Norguard would have issued a policy to 282 Mountainview without a sprinkler for an additional premium of $313" on the ground that "[h]ad NorGUARD been made aware that the Premises was only two units, instead of four units as alleged by [Skyscraper], Norguard would have declined to issue a policy, regardless of whether the property was sprinklered."  (Doc. 71 ¶ 27.)  In light of my disposition, I need not reach this issue. Norguard does not dispute that the existence of a sprinkler system resulted in a policy discount for Skyscraper.  (Doc. 61 ¶ 20.)

The materiality of a misrepresentation is ordinarily a factual question unless the insurer proffers clear and substantially uncontradicted evidence concerning materiality, in which event the matter is one of law for the court to determine. *Berger v. Manhattan Life Ins. Co.*, 805 F. Supp. 1097, 1102 (S.D.N.Y. 1992). Because the factual record is largely uncontroverted, Norguard urges that this is such a case.

A misrepresentation is material if "knowledge by the insurer of the facts misrepresented would have led to a refusal by the insurer to make such [an insurance] contract." N.Y. Ins. Law § 3105.[5] To satisfy this standard, an insurer must show that it relied on the alleged misrepresentations, meaning the statements or omissions induced the insurer to take action that the insurer might otherwise not have taken, or would have taken in a different manner. *Syncora Guarantee Inc. v. Countrywide Home Loans, Inc.*, 935 N.Y.S.2d 858, 868-69 (Sup. Ct. 2012) (citing *Geer v. Union Mut. Life Ins. Co.*, 273 N.Y. 261, 269 (1937)). "The question in such case is not whether the insurance company might perhaps have decided to issue the policy even if it had been apprised of the truth," but rather "whether failure to state the truth where there was duty to speak prevented the insurance company from exercising its choice of whether to accept or reject the application upon a disclosure of all the facts which might reasonably affect its choice." *Geer*, 273 N.Y. at 269; *see MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*, No. 602825/08, 2013 WL 1845588, at *4 (N.Y. Sup. Ct. Apr. 29, 2013) ("[U]nder *Geer*, and under Section 3105, the inquiry is . . . whether the insurer might have refused [to issue coverage] had it been aware of the truth of the misrepresentation."); *see also Banco Bradesco S.A. v. Steadfast Ins. Co.*, No. 18-CV-331, 2018 WL 4284315, at *4, 10 (S.D.N.Y. Sept. 7, 2018) (upholding arbitration award

---

[5] The parties do not dispute that materiality should be evaluated under the standard of N.Y. Ins. Law § 3105. (*See* Skyscraper Reply at 2; Norguard Reply at 9-12.)

where testimony showed that had certain omitted facts been disclosed, the "underwriting decisions would certainly have been affected").

To evaluate materiality, courts applying New York law consider evidence such as sworn statements and deposition testimony from the insurer's underwriters, so long as they are supported by the insurer's underwriting guidelines. *See Scottsdale Ins. Co. v. Priscilla Props., LLC*, 254 F. Supp. 3d 476, 482-83 (E.D.N.Y. 2017); *Stein v. Sec. Mut. Ins. Co.*, 832 N.Y.S.2d 679, 681 (App. Div. 2007). "[C]onclusory statements by an insurance company employee, which are not supported by documentary evidence," however, are "insufficient to establish that [the] misrepresentations [are] material as a matter of law." *Carpinone v. Mut. of Omaha Ins. Co.*, 697 N.Y.S.2d 381, 384 (App. Div. 1999).

Here, Norguard has submitted a sworn Declaration from its vice president of underwriting, Tracey Rinehimer, stating that "[Norguard] would not knowingly remove a PSE from a policy effective policy inception with knowledge that a fire had taken place at that risk" and "[t]he fact that a fire had occurred at an insured risk would be considered material information that NorGUARD would need to know in connection with its underwriting of a policy." (Doc. 68 ¶¶ 26.) Further, she states that "[t]he fact that a fire had occurred at an insured risk would be material information that NorGUARD would need to know" to make a decision whether to remove a PSE effective as of policy inception. (*Id.* ¶ 27.)

While Norguard in its memoranda points to no specific provisions in its underwriting or backdating guidelines to support these statements, the backdating guidelines give substantial support to Rinehimer's assertions. ███████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████ [6]

Even absent this evidence, it seems obvious to the Court that the fact that the property the risk of which is being underwritten has in fact already burned down is certainly information an insurer would need to know before issuing or changing a policy for that property. "The conclusion is irresistible" that had Norguard "been aware of the true facts," Norguard would not have backdated the change on the Policy to inception. *Equitable Life Assurance Soc'y of U.S. v. O'Neil*, 413 N.Y.S.2d 714, 716 (App. Div. 1979). "[I]n these circumstances there is no need . . . to introduce evidence of the insurer's underwriting rules or practices." *Id.* It is simply what "[c]ommon sense dictates." *Cont'l Cas. Co. v. Marshall Granger & Co., LLP*, 6 F. Supp. 3d 380, 392 (S.D.N.Y. 2014), *aff'd*, 695 F. App'x 596 (2d Cir. 2017) (summary order).

As its last defense, Skyscraper argues that Norguard is not entitled to summary judgment on this issue because at no time did Norguard seek to rescind the Policy based on Skyscraper's misrepresentation. (Skyscraper Reply at 1-3.) This argument is unpersuasive. While "New York law entitles an insurer to rescind an insurance policy – and the policy is deemed void *ab initio* – if it was issued in reliance on material misrepresentations," *Gemini Ins. Co. v. Integrity Contracting, Inc.*, No. 17-CV-1151, 2019 WL 1099705, at *2 (S.D.N.Y. March 8, 2019) (cleaned up) (collecting cases), there is no obligation that the insurer do so. Indeed, "a final decision to rescind [a] Policy cannot be made without strong evidence that such a remedy is

---

[6] The Court will provide the parties with an unredacted copy of this opinion, which has been filed under seal. These redactions are made pursuant to the protective order. (Doc. 57.)

necessary and appropriate.  Rescission is a far more drastic step tha[n] disclaiming coverage."

*Cont'l Cas. Co.*, 6 F. Supp. 3d at 395; *see Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 143

(2d Cir. 2000) ("Under New York law, rescission is an extraordinary remedy . . . .") (cleaned

up).  Rather than rescind the Policy, Norguard opted to disclaim coverage.  (Doc. 70-21.)

Skyscraper provides no authority suggesting that an insurer's decision not to rescind a policy

somehow prevents it from suing under a contract with an agent.

Moreover, here Norguard does not seek indemnification based on Skyscraper's conduct

in the formation of the Policy, but contends that Skyscraper's material omission about the fire at

the time of the PSE's removal caused confusion as to coverage for both Norguard and Plaintiff,

resulting in this lawsuit.  That Norguard might arguably have rescinded the Policy does not make

Skyscraper's conduct any less of a breach of the Agency Agreement.  I fail to see how rescission

of the Policy would have stopped Plaintiff from suing Norguard in this action, and that Norguard

might have ultimately prevailed on the merits is, again, beside the point.

For the foregoing reasons, I find that Skyscraper's misrepresentations were material as a

matter of law and that it therefore breached the Agency Agreement.

**D.**     **Damages**

I next consider the question of damages.

The Agreement contains an indemnification provision requiring Skyscraper to defend and

indemnify Norguard and hold it harmless from any costs or expenses, including attorneys' fees,

"arising out of or resulting from any negligence, error, omission or intentional act of

[Skyscraper]."  (Agreement ¶ 16).  Skyscraper argues that Norguard suffered no damages as a

result of its breach other than a $313 difference in premium between the Norguard Policy with

and without the PSE, because the PSE should have never been on the Norguard Policy in the first place and Norguard was therefore obligated to cover the Fire Loss.  I disagree.

Skyscraper cites two cases for the proposition that where an insurance broker makes misrepresentations or omissions in connection with underwriting, the measure of damages is the difference in premiums.  *See Zisovich v Aetna Cas. & Sur. Co.*, 638 N.Y.S. 2d 124, 125 (App. Div. 1996); *Neil Plumbing & Heating Constr. Corp. v. Providence Wash. Ins. Co.*, 508 N.Y.S.2d 580, 583 (App. Div. 1986).  *Zisovich*, however, involved an insurance broker's alleged negligent failure to add a car to an existing auto insurance policy, *Zisovich*, 638 N.Y.S. 2d at 125, and *Neil Plumbing* not only concerned negligent misrepresentations by an insurance agent *to the insured* that the policy covered certain losses when in fact it did not, but the court found that the difference in premiums was an *inappropriate* measure of damages, *Neil Plumbing*, 508 N.Y.S.2d at 583.  Neither case is analogous to the dispute here, where coverage is not at issue and instead the insurance company is seeking contractual indemnification from its agent based on an intentional breach of their agency agreement.

It was Skyscraper's material omissions as to the Fire Loss that caused Norguard employees, whether properly or improperly, to remove the PSE backdated to inception.  After learning of the Fire Loss, Norguard reinstated the PSE, investigated the underlying circumstances, and ultimately disclaimed coverage under the Policy.  It was Skyscraper's misrepresentation, and Norguard's ensuing investigation and disclaimer of coverage, that ultimately resulted in uncertainty for both the insurer and the insured, leading to the original dispute in this case.  It strains credulity to now suggest that this matter does not arise out of Skyscraper's "negligence, error, omission or intentional act."  (Agreement ¶ 16).  Had Skyscraper informed Norguard of the fire at the time it requested the PSE be removed, the PSE

would not have been removed, and while there might have been ensuing litigation brought by 282 Mountainview, it would have been greatly simplified, in contrast to the complex, expensive litigation that in fact resulted.[7] *This* litigation is undeniably a result of Skyscraper convincing Norguard to remove the PSE effective at inception without disclosing the fire.

Next, Skyscraper argues that Norguard's settlement payment to Skyscraper is a voluntary payment that Skyscraper cannot be expected to indemnify.  Again, I disagree.  First, the cases Skyscraper cites all involve equitable or common law indemnification, not contractual indemnification as in this case.  A contractual hold-harmless agreement can be far broader than a common law indemnification obligation, *see Covert v. City of Binghamton*, 459 N.Y.S.2d 721, 722-23 (Sup. Ct. 1983), and that is the case here.  Further, the original action could well have resulted in a finding that the Policy should be reformed to exclude the PSE and thus that Norguard was required to cover the entire Fire Loss.  *See supra* note 3 above.[8]  That Norguard chose to settle before a definitive decision on that point was reached does not make its payment voluntary, given that it settled for half of what it might have had to pay had it lost its litigation with Plaintiff.  *See, e.g.*, *Waltz v. MRC Mgmt., LLC*, 378 F. Supp. 2d 440, 442-43 (S.D.N.Y. 2005) (contractual indemnification clause enforced where settlement amount was less than what might have been owed after trial); *Royal Indem. Co. v. Wyckoff Heights Hosp.*, 953 F. Supp. 460, 467 (E.D.N.Y. 1996) (insurer had "legitimate interest for making the payment" and thus was not

---

[7] Even in that event, Skyscraper likely would have to have held Norguard harmless because the litigation would have resulted from its negligence, error, omission, or intentional act in requesting coverage with a PSE.

[8] Norguard also ran the risk that it would lose in litigation with Plaintiff because its employee violated its own guidelines by making the removal of the PSE effective at inception without having the authority to backdate.

precluded from reimbursement as volunteer, where it settled for $3 million but might have lost $8 million at trial).

Moreover, "under New York law, when an indemnitor has notice of the claim against it, the general rule is that the indemnitor will be bound by any reasonable good faith settlement the indemnitee might thereafter make." *Waltz*, 378 F. Supp. 2d at 442-43 (cleaned up). At any point, Skyscraper could have assumed its obligations under the Agreement and defended Norguard against Plaintiff's claims and taken them to trial, but it chose not to do so. Instead, Norguard, managing its own defense, opted for a safer route and settled with Plaintiff for a reasonable sum that split the difference between the all-or-nothing positions at the heart of the original dispute. "In view of the broad language of the indemnification provision, defendant is entitled to the costs and counsel fees it reasonably incurred in defense of the action brought by plaintiff." *Boyd v. Bethlehem Steel Corp.*, 668 N.Y.S.2d 817, 818 (App. Div. 1998). Accordingly, Skyscraper must reimburse Norguard for all costs and expenses arising out of Skyscraper's breach, including the settlement sum paid to Plaintiff and all legal fees, costs, and expenses occasioned by Skyscraper's breach.[9]

## IV.   <u>CONCLUSION</u>

For the reasons stated above, Norguard's motion is GRANTED and Skyscraper's motion is DENIED. The Clerk of Court is respectfully directed to terminate the pending motions.

---

[9] Skyscraper also argues that Travelers had the primary obligation to pay Plaintiff's claim and that therefore Norguard should not have made any payment to Plaintiff until it was determined that excess coverage was necessary. (Skyscraper Mem. at 17-18; Skyscraper Reply at 9-10.) The matter is not as straightforward as Skyscraper suggests, (*see* Norguard Reply at 14-16), but in any event, again, Skyscraper could have assumed its indemnity obligation and made those arguments on behalf of Norguard at any time, but having failed to do so, it cannot now oppose the settlement after the fact.

(Docs. 58, 65.)  The parties are to confer to see whether they can reach an agreement on the amount of the judgment, and to advise the Court by letter, no later than August 2, 2021, as to the status of those discussions and their proposals for next steps.

**SO ORDERED.**

Dated:  July 12, 2021
        White Plains, New York

_____
    CATHY SEIBEL, U.S.D.J.